UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

SUSAN COX,                                                                                       PLAINTIFFS

vs.                                                              CIVIL ACTION NO. 3:19-CV-602-CRS

CSX TRANSPORTATION,                                                                      DEFENDANT

## MEMORANDUM OPINION

This matter is before the Court on CSX Transportation's ("CSXT" or "Defendant") motion to dismiss an action filed by Susan Cox ("Cox" or "Plaintiff"). DN 5. Plaintiff filed a response. DN 7. Defendant filed a reply. DN 8. This matter is now ripe for adjudication. For the reasons below, the Court will grant Defendant's motion and dismiss Plaintiff's action with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I. Legal Standard

When evaluating a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007))(internal quotation marks omitted). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Although the complaint need not contain "detailed factual allegations," "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and alteration omitted). "Nor does a complaint suffice

if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft*, 556 U.S. at 678 (internal quotation marks and citation omitted).

## II. Background

Plaintiff Susan Cox began working for Defendant CSXT on October 1, 2004. DN 1-2 at 4. Cox is a member of the Transportation Communications International Union, *id.*, and her employment relationship is governed by a Collective Bargaining Agreement ("CBA"), *id.* at 5. When positions are eliminated, CSXT follows a seniority-based bidding system, which is governed by the CBA, to allow displaced workers to find new positions within the company. *Id.* Cox sites the following relevant provisions from the CBA as the source of CSXT's seniority bidding system:

> **RULE 3-SENIORITY DATUM**
>
> (a) Seniority is established and its exercise allowed as provided by the terms of this agreement. Seniority rights of employees to vacancies or new positions covered by this agreement will be governed by these rules. Seniority established hereunder is to be retained by the employee, subject to the terms of this agreement, while same remains in effect. The two parties signatory hereto have full authority to jointly reach a mutual, definite, and final conclusion on any question affecting seniority field under this agreement.
>
> (b) Seniority begins at the time the employee is assigned to a position under the agreement on the seniority district in which employed.
>
> (c) Where two (2) or more employees enter the service at the same hour on the same day, the senior in age will be considered the senior employee.
>
> **RULE 4-RETENTION OF SENIORITY**
>
> (a) Employees occupying a POF position under Rule 1 as of 6/1/81 who have seniority on the district promoted from shall continue to accumulate seniority on that district. Employees" promoted to such positions on and after 6/1/81 who have seniority on the district promoted from shall continue to accumulate seniority on that district, subject to paragraph (c). While so engaged they will be considered as on leave of absence and in case released from such position they shall have rights as named in Rule 41. Employees occupying such positions shall be shown is on rosters of their home districts as required by this rule, designated by an asterisk(*). Employees hired for such positions on and after 6/1/81 will not establish seniority.

…

**RULE 8-EXERCISE OF SENIORITY**

Seniority rights of employees covered by these rules may be exercised only in case of bulletined vacancies, new positions or reduction of forces, or as otherwise provided in this agreement. An employee who has a seniority displacement right may exercise seniority to his former position if same is under bulletin and the bulletin advertising such position shall be cancelled.

…

**RULE 13-REDUCING FORCES**

(a) In reducing forces, seniority rights shall govern. Except as otherwise provided in paragraph (c) of this rule, at least five (5) working days' advance notice shall be given employees affected in reduction of forces or in abolishing positions. A copy of such notice shall also be posted on bulletin boards in affected seniority districts. Employees whose positions are abolished must exercise their seniority rights within seven (7) calendar days; other employees affected must exercise their seniority rights in the same manner. Employees who do not possess sufficient seniority to displace a regular position shall be considered extra and governed by the provisions of Rule 15.

DN 1-2 at 23–28.

Cox initially worked at the O'Bannon Rail Yard ("O'Bannon") as a clerk. DN 7 at 2. In September 2018, CSXT eliminated the clerk positions at O'Bannon, and all O'Bannon employees were required to bid on positions at the Osborne Rail Yard ("Osborne"). DN 1-2 at 7. Cox alleges she was the second-most-senior employee bidding for positions at Osborne. *Id*. at 4. Cox bid for, and received, a second-shift crew-hauling position at Osborne, which initially had Fridays and Saturdays off. *Id*. at 7. Cox claims she began working in Osborne on October 2, 2018. *Id*. at 8.

Cox alleges a less-senior employee, Rachel Crawhorn ("Crawhorn"), did not have bidding rights because she was on maternity leave at the time the O'Bannon positions were eliminated, and the CBA states "[a]n employee on leave of absence, or on vacation, or sick leave, does not have bidding rights while away." *Id*. at 30. Cox alleges Crawhorn returned from maternity leave

in September or October 2018 and received a first-shift position, which initially had Wednesdays and Thursdays off. *Id*. at 6. Cox alleges that on October 10, 2018, the job schedules were changed to accommodate Crawhorn by moving the first shift's days off to Tuesday and Wednesday. *Id*. at 10. This schedule change also resulted in Cox's days off moving to Thursdays and Fridays. *Id*. at 10. Cox states the schedule change "was created solely for the benefit of Ms. Crawhorn," a junior employee, in contravention of the CBA's seniority rules. *Id*. at 10. Cox alleges CSXT falsely claimed the schedule change was due to "operational needs" when, in fact, the schedule was changed "for no reason other than to accommodate Ms. Crawhorn and, thus, other employees with less seniority because [the Assistant Superintendent, Mr. Salyers] favored those employees over Ms. Cox and other senior employees." *Id*. at 11. Cox alleges she was harmed by the schedule change because "the purpose for maintaining the original schedule was to have Friday and Saturday off days so she could care for her elderly parents in four (4) consecutive days." *Id*. at 12.

Cox also claims she received thirty minutes of training prior to beginning her crew-hauling position at Osborne—far less than the thirty days of training required by CSX's "contractual agreements and company policies." *Id*. at 8. Cox alleges her lack of training placed CSX's employees "in extreme and dangerous situations which could have resulted in serious bodily injury or death." *Id*. at 9.

Cox brought the instant suit on June 13, 2019. *Id*. at 22. Cox asserted four claims under the Kentucky Civil Rights Act (KCRA): (1) age discrimination, (2) retaliation based on age discrimination, (3) hostile work environment, and (4) discrimination based on sex; and claims under Kentucky common law: (1) intentional infliction of emotional distress and (2) promissory estoppel. On September 9, 2019, Defendant filed a motion to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6) alleging that Cox's claims are preempted by the Railway Labor

4

Act ("RLA"), 45 U.S.C. § 151 *et seq*. DN 5 at 1. In her response, Cox argues that her claims are excepted from preemption by the RLA. DN 7.

The RLA establishes a mandatory arbitral mechanism to handle disputes "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 153. The Sixth Circuit has developed a two-step approach for determining whether the RLA preempts a claim. "First, the district court must examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms." *DeCoe v. GMC*, 32 F.3d 212, 216 (6th Cir. 1994)(citing *Terwilliger v. Greyhound Lines, Inc.*, 882 F.2d 1033, 1037 (6th Cir. 1989). "Second, the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law. If the right both is borne of state law and does not invoke contract interpretation, then there is no preemption." *Id*. If either of these prongs is satisfied, the claim is preempted by the RLA.

The Court will address why Plaintiff's claims do not fall under Plaintiff's proposed exceptions to RLA preemption. The Court will then address why Plaintiff's claims are preempted by the RLA.

## III. Discussion

### A. Exceptions to RLA Preemption

Cox argues that her claims are not preempted by the RLA because (1) her claims are not based wholly on the RLA, (2) her claims fall under the "hybrid exception" to RLA preemption, and (3) Defendant waived its arbitration provision by "taking action that was less than sufficient to accommodate Ms. Cox." DN 7 at 1. Plaintiff's arguments are without merit.

### 1. Claims Based on the RLA

Ms. Cox argues her claims are not preempted by the RLA because, in part, they are based on "evidence that [CSXT] did not exercise ordinary care to prevent foreseeable harm." DN 7 at 3. In her response to Defendant's motion to dismiss, Cox alleges her lack of training violated not only the CBA, but also Kentucky's "universal duty of care." *Id.* (citing *James v. Meow Media, Inc.*, 300 F.3d 683, 690 (6th Cir. 2002)(quoting *Grayson Fraternal Order of Eagles v. Claywell*, 736 S.W.2d 328, 332 (Ky. 1987)). Plaintiff's argument is without merit.

The RLA may not preempt state law claims brought properly in a plaintiff's complaint when those state law claims do not require interpretation of the CBA. *See Staunch v. Cont'l Airlines, Inc.*, No. 1:06-CV-1011, 2007 U.S. Dist. LEXIS 5767, at *14 (N.D. Ohio Jan. 26, 2007)(denying dismissal of pregnancy discrimination and wrongful termination claims pled under "valid Ohio statutes and common laws, not the collective bargaining agreement"). However, "[a] plaintiff cannot raise new legal claims in response to a dispositive motion filed by the defendant." *Faber v. Smith*, No. 17-2523, 2018 U.S. App. LEXIS 15343, at *6 (6th Cir. June 6, 2018).

In the instant case, Cox did not bring any claims for CSXT's alleged breach of its "universal duty of care" in her complaint. Cox's complaint fails to allege any damages that resulted from CSXT's alleged actions—an essential element for a negligence claim. *See* DN 1-2 at 9 ("[CSXT] failed to appropriately train its staff…which *could have* resulted in serious bodily injury or death")(emphasis added). More importantly, Cox's complaint lacks any reference to "negligence" or "duty of care" at all. *See generally* DN 1-2. Plaintiff's complaint bases its allegations of insufficient training on the CBA and Defendant's own policies. *See id.* ("CSX failed to appropriately train its staff and violated both its contractual agreements and company policies by placing its employees in extreme dangerous situations"); ("Ms. Cox is still unclear about certain

areas and destinations on the site because she has not been sufficiently trained and [CSXT] has failed to adhere to its own policies"); *see id. at 8* ("According to the contract between [CSXT] and Ms. Cox, she should have received at least thirty (30) days of training."). Accordingly, Plaintiff's johnny-come-lately negligence claim cannot protect her CBA-based claims from preemption under the RLA.

### 2. The Hybrid Exception to RLA Preemption

Ms. Cox argues her claims are not preempted by the RLA because "[b]oth Defendant and the Union breached their respective duties, and therefore, Ms. Cox's claims are not preempted by the Railway Labor Act." DN 7 at 3. Plaintiff's argument is without merit.

To support her argument, Cox cites *Martin v. American Airlines, Inc.*, an Eighth Circuit case where that court "introduce[d] the hybrid exception." DN 7 at 4. In *Martin*, the court held "[a] court has jurisdiction to consider a contract violation claim when there are allegations and facts supporting those allegations indicating collusion or otherwise typing the employer and the union together in allegedly arbitrary, discriminatory, or bad faith conduct amounting to a breach of duty of fair representation." *Martin v. Am. Airlines, Inc.*, 390 F.3d 601, 608 (8th Cir. 2004)(quoting *Raus v. Brotherhood of Ry. Carmen*¸663 F.2d 791, 798 (8th Cir. 1981). The hybrid exception to the preemptive power of the RLA is only effective if a plaintiff first pleads and then proves a breach of the duty of fair representation by the union. *Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 47 (1979); *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 67 (1991).

Plaintiff fails to properly plead a claim for breach of the duty of fair representation by the union. In her complaint, Ms. Cox references the union four times, but none of these instances rise to the level of a breach of duty of fair representation. First, Ms. Cox alleges she "contacted her local union representative, Fred Robinson…to help mitigate the situation and to give cause to

7

[CSXT] to rightfully impose its seniority bidding system and allow Ms. Cox to exercise her seniority over Ms. Crawhorn." DN 1-2 at 8. Following this conversation "Ms. Cox bid on the second shift job, won, and rightfully displaced Ms. Edelen." *Id*. Second, Cox states that she "informed her local union representative…about the training deficit, encouraging these individuals that she could benefit from further training to learn her way around." *Id*. at 9. After this conversation, "one of the trainmasters permitted Ms. Edelen to stay over so that she could show Ms. Cox how to navigate to a couple locations." *Id*. at 9. Third, Cox alleges she heard about the potential shift change (that ultimately resulted in Cox's days off changing) and "followed the proper procedure by notifying the union of the matter *who in turn notified CSX*." *Id*. at 10 (emphasis added). Fourth, Ms. Cox states that "[a]fter notifying the union of the…discrimination and harassment, Defendant made no effort to protect or accommodate Ms. Cox." *Id*. at 20. On the face of Plaintiff's complaint, Cox fails to plead facts sufficient to find that the union breached its duty of providing fair representation. In each of these instances, it Cox alleges dissatisfaction with the response (or lack thereof) of Defendant, not her representation by the union. Even if Cox was dissatisfied with the outcome of the union's representation, she does not allege any coordinated action between the union and CSXT that can be construed as "collusion or otherwise typing the employer and the union *together* in allegedly arbitrary, discriminatory, or bad faith conduct amounting to a breach of duty of fair representation." *Martin,* 390 F.3d at 608 (quoting *Raus¸* 663 F.2d at 798)(emphasis added). Consequently, the hybrid exception to exhaustion is inapplicable to Cox's claims against CSXT.

### 3. Waiver of Mandatory Arbitration

Ms. Cox argues that her claims are not preempted by the RLA because "[CSXT] undeniably waived its mandatory arbitration provision by taking action that was less than sufficient

8

to accommodate Ms. Cox and other employees." DN 7 at 7. Plaintiff does not cite any binding case law to support her contention that CSXT's less-than-sufficient response acts as a waiver of the mandatory arbitration provision of the CBA. Instead, Plaintiff rehashes the argument that her claims "stem from outside the Railway Labor Act and Collective Bargaining Agreement." DN 7 at 8. As the Court will explain more fully in subsequent sections, Cox's claims all require interpretation of the CBA, placing them squarely within the preemptive power of the RLA.

### B. RLA Preemption of KCRA Claims

#### 1. Age Discrimination

Cox alleges CSXT discriminated against her because of her age by "unjustifiably modifying her position to accommodate a younger employee who did not have the requisite qualifications to receive such treatment." DN 1-2 at 13. Ms. Cox brings this claim under the Kentucky Civil Rights Act, KRS § 344.040(1)(a), which makes it unlawful for an employer "[t]o fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's…age forty (40) and over." Whether Crawhorn had "the requisite qualifications" to receive a scheduling priority over Cox requires examination of the CBA's seniority and bidding processes. Because Cox's age discrimination claim cannot be resolved without interpretation of the CBA, it is preempted by the RLA. Therefore, Cox's age discrimination claim will be dismissed with prejudice.

#### 2. Retaliation

Cox alleges CSXT retaliated against her by "forcing her to change her work schedule and further CSXT did not follow the seniority-based system to alter work schedules." DN 1-2 at 15. Cox claims she was "adversely affected by CSXT's failure to adhere to its seniority-and bidding-

9

based system." *Id*. Cox brings this claim under the Kentucky Civil Rights Act, KRS § 344.280, which makes it unlawful for an employer "[t]o retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter." *Id*. According to Cox's own complaint, determining whether CSXT acted unlawfully requires a determination of whether CSXT abided by "its seniority-and bidding-based system to alter work schedules" as governed by the CBA. Because Cox's retaliation claim cannot be resolved without interpretation of the CBA, it is preempted by the RLA. Therefore, Cox's retaliation claim will be dismissed with prejudice.

### 3. Hostile Work Environment

Cox alleges CSXT created a hostile work environment by failing to "cooperate with Ms. Cox or its employees to promote reasonable protection of its employees." DN 1-2 at 16. Cox claims CSXT's failure to provide proper training "violated its own Agreement in failing to train its employees or preserve the health and safety of its employees." *Id*. Specifically, Cox cites Rule 55 of the CBA, which states "[t]he railroad will cooperate with the employees in the reasonable protection for their health and safety." *Id*. Determining whether CSXT acted unlawfully requires interpretation of the CBA to understand whether CSXT "violated its own Agreement in failing to train its employees." Because Cox's hostile work environment claim cannot be resolved without interpretation of the CBA, it is preempted by the RLA. Therefore, Cox's hostile work environment claim will be dismissed with prejudice.

### 4. Sex Discrimination

Cox alleges CSXT discriminated against her because of her sex by accommodating the schedule of a junior coworker, Mr. Childress, "because he was a male." DN 1-2 at 20. Cox alleges

10

this accommodation was made to entice Childress to accept an alternate schedule, with the ultimate goal of accommodating Crawhorn's schedule. *Id*. Cox claims the effect of these schedule changes resulted in CSXT changing the days off she was entitled to because of her seniority. *Id*. Cox brings this claim under the Kentucky Civil Rights Act, KRS § 344.040(1)(a), which makes it unlawful for an employer "[t]o fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's…sex." Whether or not Childress' receipt of his desired schedule was improper according to CSX's seniority rules requires interpretation of the CBA's seniority and bidding processes. Because Cox's sex discrimination claim cannot be resolved without interpretation of the CBA, it is preempted by the RLA. Therefore, Cox's sex discrimination claim will be dismissed with prejudice.

### C. RLA Preemption of State Common Law Claims

#### 1. Intentional Infliction of Emotional Distress

Cox alleges CSXT "engaged in intentional and reckless conduct and had a specific purpose of inflicting emotional distress on Ms. Cox or acted recklessly in deliberate disregard for a high degree of the probability that emotional distress would result" when it changed Cox's work schedule. DN 1-2 at 16–17. To establish an intentional infliction of emotional distress claim, Cox must demonstrate that (1) the wrongdoer's conduct was intentional or reckless, (2) the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality, (3) there is a causal connection between the wrongdoer's conduct and the emotional distress, and (4) the emotional distress must be severe. *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 788 (Ky. 2004).

Here, Plaintiff accuses Defendant of engaging in the outrageous conduct of changing her days off from Fridays and Saturdays to Thursdays and Fridays. Resolution of this claim requires interpretation of the CBA with respect to whether CSXT's schedule change was made in accordance with the CBA's requirements. If CSXT's actions were in accord with the CBA, they cannot reach the threshold of to going "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hall v. Consol of Ky., Inc.*, 162 F. Appx. 587, 591 (6th Cir. 2006)(quoting *Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1, 3 (Ky. 1990)); *see Saridakis v. United Airlines*, 166 F.3d 1272, 1278 (9th Cir. 1999)(holding that the RLA preempts claims for intentional infliction of emotional distress because "determining whether an employer's conduct is outrageous requires an interpretation of the CBA, therefore the claim is not independent"). Because Cox's intentional infliction of emotional distress claim cannot be resolved without interpretation of the CBA, it is preempted by the RLA. Therefore, Cox's intentional infliction of emotional distress claim will be dismissed with prejudice.

    **2. Promissory Estoppel**

Cox alleges that "through its Agreement and employee relations, [CSXT] promised to adhere to its seniority-bidding system" and that she relied on that system to her detriment because CSXT changed her days off from Friday and Saturday to Thursday and Friday. DN 1-2 at 17. Cox points specifically to Rule 10 of the CBA, which states "[e]mployees covered by these rules shall be in line for promotion. Promotion, assignments, and displacements shall be based on seniority fitness, and ability." DN 1-2 at 18. According to Cox's own complaint, determining whether CSXT acted unlawfully requires a determination of whether it abided by the terms of the CBA. Because Cox's age discrimination cannot be resolved without interpretation of the CBA, it is preempted by the RLA. Therefore, Cox's promissory estoppel claim will be dismissed with prejudice.

**III. Conclusion**

Plaintiffs claims are preempted by the RLA and will be dismissed with prejudice. For the reasons stated herein, a separate order will be entered this date in accordance with this opinion.

February 13, 2020

**Charles R. Simpson III, Senior Judge
United States District Court**